**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DANIEL HAMPTON, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br>v.<br><br>NAVIGATION CAPITAL PARTNERS, INC.,<br><br>     Defendant. | Case No.: |

**CLASS ACTION COMPLAINT FOR
VIOLATION OF WARN ACT 29 U.S.C. § 2101, ET SEQ.**

Plaintiff Daniel Hampton ("Plaintiff") alleges on behalf of himself and a class of similarly situated former employees against Navigation Capital Partners, Inc. ("**Defendant**" or "**Defendant NCP**" or "**NCP**"), as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Defendant NCP for making the wrongful decision that culminated in its subsidiaries' shut down, termination of employees, and entry into bankruptcy. As detailed herein, Defendant NCP made these decisions as the "single employer" with its subsidiaries without providing 60 days' notice of the shutdown to those employees in violation of the Worker Adjustment and Retraining Notification Act ("**WARN Act**"), 29 U.S.C. § 2101 *et. seq.*

2. Defendant NCP, a private equity firm, aspired to become the market leader in electricity grid services by acquiring companies in that sector. To that end, NCP first hired Robert Shively ("**Shively**"), an experienced industry executive, as its "Executive-in-Residence."

NCP tasked him with identifying acquisition targets, and then with running the acquired companies.

3. Defendant NCP first acquired a metering company, which it later renamed Metadigm Services, Inc. ("**Services**").  NCP made Robert Shively its CEO and placed him on its board of directors with three NCP partners: founders Larry Mock ("**Mock**") and Eerik Giles ("**Giles**"), and NCP Operating Partner, Craig Kirsch ("**Kirsch**").  NCP thus held four out of six board seats at Services.

4. Defendant NCP next folded in a grid communications company, and, lastly, acquired an engineering firm, which it renamed Metadigm Engineering, Inc. ("**Engineering**"), and made a subsidiary of Services.

5. Defendant NCP's standard practice was to have one of its Operating Partners serve as a bridge between itself and the CEO of its companies such as Metadigm as a way to ensure that objectives were met.  On information and belief, NCP Operating Partner Craig Kirsch performed that role.

6. Craig Kirsch strove to work seamlessly inside the companies to bring together the NCP investment team with the operating, financing and strategic areas of the business.  NCP Operating Partners considered themselves "true partners" with their CEO's.

7. On or about March 18, 2013, the 150 or so employees who worked at the Metadigm facilities in Georgia (Atlanta and Covington) were terminated without having received 60 days' notice in advance of their terminations.

8. On March 20, 2013, NCP partners or principals Larry Mock, Eerik Giles, Craig Kirsch and Robert Shively authorized the filing of the chapter 7 petition of Metadigm Holdings Inc. ("**Holdings**") (together with Services and Engineering, the "**Metadigm Debtors**"), which

held NCP's interest in the Metadigm companies. The petition was filed on March 21, 2013 along with those of Services and Engineering in the United States Bankruptcy Court for the District of Northern Georgia, Case No. 13-56201-crm.

9. In those cases (now consolidated), Plaintiff filed adversary proceedings seeking WARN Act relief on March 27, 2013 against the Metadigm Debtors (Adv. Pro. Nos. 13-05122, 13-05123, and 13-05124).[1]

10. Plaintiff brings this action on behalf of himself, and other similarly situated former employees who were terminated without cause by Defendant as a single employer with Metadigm, as part of, or as the foreseeable result of, plant closings or mass layoffs, and who were not provided 60 days advance written notice of their terminations, as required by WARN Act.

11. Plaintiff and all similarly situated employees seek to recover 60 days wages and benefits, pursuant to the WARN Act, from Defendants.

**JURISDICTION AND VENUE**

12. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1367 and 29 U.S.C. § 2104(a)(5).

13. This court has personal jurisdiction over NCP because this entity is incorporated in this judicial district, and therefore, resides here. Also, NCP is the "single employer" with the Metadigm Debtors, all of whom are incorporated in the State of Delaware.

---

[1] Plaintiff filed a Complaint against Metadigm Services, Inc. prior to its filing a chapter 7 petition. The petition automatically has stayed litigation against it. Plaintiff does not seek to continue any judicial process against Metadigm Services, Inc. outside of the bankruptcy case. This Complaint presently asserts claims against only Navigation Capital Partners, Inc., and refers to Metadigm Services, Inc. (and co-debtors, Metadigm Holdings, Inc. and Metadigm Engineering, Inc., cumulatively "**Metadigm Debtors** or "**Metadigm**") due to their relevance to the facts underlying the claim against NCP.

14. Venue is proper in this District pursuant to 29 U.S.C. § 2104(a)(5) and 28 U.S.C. § 1391 because this is the judicial district in when NCP is incorporated.

## THE PARTIES

*Plaintiff*

15. At all relevant times, Plaintiff was employed by Defendant and worked at Metadigm's facility located at 5775 Peachtree Dunwoody Road, NE, Suite C-300 Atlanta, Georgia (the "**Atlanta Facility**") until his termination on or about March 18, 2013.

16. At all relevant times, the other similarly situated former employees worked at the Atlanta Facility or 45 Chamisa Road, Covington, Georgia (together, the "**Facilities**"), as that term is defined by the WARN Act, until their terminations on or about March 18, 2013.

*Defendant*

17. Defendant Navigation Capital Partners, Inc. is a Delaware corporation with its principal place of business located at One Buckhead Plaza, 3060 Peachtree Rd. NW, Suite 780 Atlanta, Georgia and conducted business in this district.

18. Defendant NCP is the majority shareholder of Holdings owning at least 68 percent of its shares. On information and belief, NCP created Holdings for the sole purpose of gaining corporate control over the Metadigm entities.

19. Upon information and belief, Holdings owns 100 percent of the shares of Services. Services comprises two companies NCP acquired. First, NCP acquired Specialized Technical Services a Kentucky-based provider of smartgrid infrastructure upgrades and meter-related services in February 2011. On information and belief, NCP acquired Specialized Technical Services for the sole purpose of gaining corporate control over its business in folding into its Metadigm enterprise.

20. Defendant NCP next acquired LEPService of Atlanta, a provider of related services in July 2011. On information and belief, NCP acquired LEPService of Atlanta for the sole purpose of gaining corporate control over its business and combining with Specialized Technical Services into Metadigm Services.

21. Upon information and belief, Services owns 100 percent of the shares of Engineering. In July 2011, NCP acquired Power Engineering Associates a consulting company some of whose clients overlapped with Services' customer base. On information and belief, NCP acquired Power Engineering Associates for the sole purpose of gaining corporate control over its business in folding into its Metadigm enterprise.

22. Upon information and belief and at all relevant times, Defendant NCP was the ultimate owner of Metadigm.

23. Upon information and belief, NCP made the decision that culminated in the Metadigm's entering bankruptcy on or about March 20, 2013

24. NCP's own partners and principals were the individuals who authorized Metadigm to file for bankruptcy protection.

25. Upon information and belief, Defendant NCP made the decisions that gave rise to the terminations the Plaintiff and other similarly situated former employees in a mass layoff or plant closing without providing 60-days' notice advance notice.

## WARN CLASS ALLEGATIONS, 29 U.S.C. § 2104

26. Plaintiff brings this Claim for Relief for violation of 29 U.S.C. § 2101 *et seq.*, on behalf of himself and on behalf of all other similarly situated former employees, pursuant to 29 U.S.C. § 2104(a)(5) and Fed. R. Civ. P. 23(a), who worked at or reported to one of Defendant's Facilities and were terminated without cause on or about March 18, 2013, and within 90 days of

that date, or were terminated without cause as the reasonably foreseeable consequence of the mass layoffs and/or plant closings by Defendant on or about March 18, 2013, and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5) (the "**WARN Class**").

27. The persons in the WARN Class identified above ("**WARN Class Members**") are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendant.

28. On information and belief, the identity of the members of the class and the recent residence address of each WARN Class Member is contained in the books and records of Defendant.

29. On information and belief, the rate of pay and benefits that were being paid by Defendant to each WARN Class Member at the time of his/her termination is contained in the books and records of the Defendant.

30. Common questions of law and fact exist as to members of the WARN Class, including, but not limited to, the following:

(a) whether the members of the WARN Class were employees of the Defendant who worked at or reported to Defendant's Facilities;

(b) whether Defendant and Metadigm constitute a single employer under the WARN Act;

(c) whether Defendant unlawfully terminated the employment of the members of the WARN Class without cause on their part and without giving them 60 days advance written notice in violation of the WARN Act; and

(d) whether Defendant unlawfully failed to pay the WARN Class Members 60 days wages and benefits as required by the WARN Act.

31. Plaintiff's claims are typical of those of the WARN Class. Plaintiff, like other WARN Class Members, worked at or reported to one of Defendant's Facilities and was terminated without cause on or about March 18, 2013, in mass layoffs and/or plant closings, as defined by 29 U.S.C. § 2101(a)(2), (3), by Defendant

32. Plaintiff will fairly and adequately protect the interests of the WARN Class. Plaintiff has retained counsel competent and experienced in complex class actions, including the WARN Act and employment litigation.

33. Class certification of these claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the WARN Class predominate over any questions affecting only individual members of the WARN Class, and because a class action superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of WARN Act litigation, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant, and damages suffered by individual WARN Class members are small compared to the expense and burden of individual prosecution of this litigation.

34. Concentrating all the potential litigation concerning the WARN Act rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the WARN Act rights of all the members of the Class.

35. The Plaintiff intends to send notice to all members of the WARN Class to the extent required by Rule 23.

## CLAIMS FOR RELIEF

### Violation of the WARN Act, 29 U.S.C. § 2104

36. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

37. At all relevant times, Defendant employed more than 100 employees who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

38. At all relevant times, Defendant was an "employer," as that term is defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639(a), and continued to operate as a business enterprise until they decided to effect mass layoffs or plant closings at the Facilities, and discontinue operations by filing the chapter 7 petitions.

39. For purposes of the WARN Act, NCP and Metadigm constitute a "single employer" in that, among other things:

    (a) NCP and Metadigm shared common ownership, in that NCP owned at least 68 percent of Metadigm Holdings, Inc. which in turn wholly-owned Metadigm Services, Inc. which wholly-owned Metadigm Engineering, Inc. NCP was the ultimate owner of Metadigm and the controlling shareholder of the three Metadigm entities;

    (b) NCP and Metadigm shared common officers and directors, in that NCP's Executive-in-Residence Robert Shively, and NCP founders, partners or principals were the majority directors of Metadigm, and held executive titles, as follows:

    i.  Holdings: Shively, President/CEO/Director; Mock, Director; Giles, Secretary/Director; and Kirsch, Director.

    ii.  Services: Shively, President/CEO/Director; Mock, Chairman; and Giles, VP/Secretary/Treasurer/Director.

    iii.  Engineering: Shively, President/CEO/Director; Mock, Director; and Giles, Secretary/Director.

  (c)  Defendant NCP exercised *de facto* control over the labor practices of Metadigm including the termination of Plaintiff and Class Members, by controlling the decision to effect mass layoffs or plant closings at the Facilities.

    i.  Defendant NCP created the Metadigm entities as alter egos or agents to hold the business operations that NCP purchased and owned for the sole purpose of gaining and exercising corporate control over them;

    ii.  Defendant NCP managed Services and charged Metadigm management fees of at least $75,000 plus expenses for the management services NCP provided;

    iii.  Defendant NCP applied its management expertise to Metadigm to increase their value and thereby profit by selling them for several times the price NCP paid;

    iv.  Defendant NCP's transactions with Metadigm were not at arms' length inasmuch as NCP's own managing and operating partners created the Metadigm enterprise structure, managed it and oversaw its operations, installing its Executive-in-Residence as its CEO, and integrating it in NCP's private equity enterprise; and

v. Defendant NCP controlled the decisions culminating in the termination of the Plaintiff and similarly-situated employees on or about March 18, 2013.

(d) There was a unity of personnel policies emanating from a common source between Defendant NCP and Metadigm in that the ultimate decision to discontinue Metadigm's operations, terminate the employees and file for bankruptcy was with NCP acting through its officers, partners, agents and alter egos; and

(e) There was a dependency of operations between Defendant NCP and Metadigm in that Metadigm depended on the operational, financial and strategic expertise of NCP, the executive resources, financing, and direction of NCP.

40. On information and belief, on or about March 18, 2013, Defendant NCP with Metadigm as a single employer effected mass layoffs and/or plant closings at the Facilities, as those terms are defined by 29 U.S.C. § 2101(a)(2).

41. The mass layoffs or plant closings at the Facilities resulted in "employment losses," as that term is defined by 29 U.S.C. § 2101(a)(2) for at least fifty of Defendant's employees as well as more than thirty-three percent (33%) of Defendant's workforce at the Facilities, excluding "part-time employees," as that term is defined by 29 U.S.C. § 2101(a)(8).

42. Plaintiffs and the Class Members were terminated by Defendant without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoffs or plant closings by Defendant at the Facilities.

43. Plaintiff and the WARN Class Members are "affected employees" of Defendant NCP, within the meaning of 29 U.S.C. § 2101(a)(5).

44. Defendant NCP was required by the WARN Act to give the Plaintiff and the WARN Class Members at least 60 days advance written notice of their terminations.

45. Defendant NCP failed to give the Plaintiff and the WARN Class members written notice that complied with the requirements of the WARN Act.

46. Plaintiff and each of the Class Members, are "aggrieved employees" of the Defendant as that term is defined in 29 U.S.C. § 2104(a)(7).

47. Defendant NCP failed to pay Plaintiff and each of the WARN Class Members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 days following their respective terminations, and failed to make the pension and 401(k) contributions and provide employee benefits under COBRA for 60 days from and after the dates of their respective terminations.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, individually and on behalf of all other similarly situated persons, prays for the following joint and several relief as against Defendant NCP:[2]

A. Certification of this action as a class action;

B. Designation of Plaintiff Daniel Hampton as the Class Representative;

C. Appointment of the undersigned attorneys as Class Counsel;

D. A judgment in favor of the Plaintiff and the other similarly situated former employees equal to the sum of: their unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension and 401(k) contributions and other COBRA benefits, for 60 days, that would have been covered and paid under the then-applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C. § 2104 (a)(1)(A); and

---

[2] As stated in footnote 1, above, to the extent the automatic stay remains in effect, Plaintiff does not seek any relief or finding against the Metadigm entities outside of their bankruptcy proceeding.

E. Such other and further relief as this Court may deem just and proper.

Dated: April 26, 2013
      Wilmington, Delaware

Respectfully submitted,

By:   /s/ *Frederick Rosner*
Frederick Rosner (DE #3995)
Julia Klein (DE #5198)
**THE ROSNER LAW GROUP LLC**
824 N. Market Street
Suite 810
Wilmington, DE 19801
Telephone: (302) 777-1111

Jack A. Raisner
René S. Roupinian
**OUTTEN & GOLDEN LLP**
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Email: jar@outtengolden.com
Email: rsr@outtengolden.com

*Attorneys for Plaintiff and the Putative Class*