IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DANIEL HAMPTON, on behalf of :
himself and all others similarly situated, :
:
:
Plaintiff, :
:
v. : C.A. No. 13-747-LPS
:
NAVIGATION CAPITAL PARTNERS, :
INC., :
:
Defendant.

---

Frederick Brian Rosner, Julia Bettina Klein, THE ROSNER LAW GROUP, LLC,
Wilmington, DE

Jack A. Raisner, Roupinian S. Rene, OUTTEN & GOLDEN, LLP,
New York, NY

    Attorneys for Plaintiffs.


Kathleen Furey McDonough, Michael Brendan Rush, POTTER ANDERSON & CORROON,
LLP, Wilmington, DE

Flora Manship, James H. Coil, III, KILPATRICK, TOWNSEND & STOCKTON, LLP,
Atlanta, GA

    Attorneys for Defendant.

---

## MEMORANDUM OPINION

August 19, 2014
Wilmington, Delaware.



**STARK, U.S. District Judge:**

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Claims. (D.I. 8) Defendants filed the motion on June 3, 2013, and the Court heard oral argument on March 20, 2014. For the reasons discussed below, the Court will deny Defendant's motion.

## BACKGROUND[1]

### I. The Parties and the Complaint

Plaintiff Daniel Hampton ("Plaintiff") filed this putative class action against Defendant Navigation Capital Partners, Inc. ("NCP" or "Defendant") alleging that Defendant and its subsidiaries, Metadigm Holdings, Inc. ("Holdings"), Metadigm Services, Inc. ("Services"), Metadigm Engineering, Inc. ("Engineering") (collectively, "Metadigm"), terminated Plaintiff and other workers from employment in violation of the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 *et seq.* (D.I. 1)

NCP is a private equity firm that sought to engage in the electricity grid services market by acquiring a series of companies operating in that sector. (D.I. 1 ¶ 2) To that end, NCP first created Holdings, retaining at least 68% of its shares, and hired an experienced industry executive, Robert Shively, for the purpose of identifying potential acquisitions for NCP in the market. (*Id.* at ¶¶ 2, 18) NCP then purchased a metering company, which became Services, and subsequently acquired an engineering firm, which became Engineering, and made it a subsidiary of Services. (*Id.* at ¶¶ 3, 4) NCP made Mr. Shively President, CEO, and a Director of Metadigm Holdings, Services, and Engineering and installed three of its partners, NCP founders Larry

---

[1]In reviewing a motion to dismiss for failure to state a claim, the Court takes all well-pleaded factual allegations as true.

Mock and Eerik Giles as well as NCP Operating Partner Craig Kirsch, on the Metadigm entities' boards as directors. (*Id.* at ¶¶ 3, 39(b)(i)-(iii)) NCP – which owned 68% of Holdings, which itself wholly-owned Services, which in turn wholly-owned Engineering – was the ultimate owner of Metadigm. (*Id.* at ¶ 39(a))

On March 18, 2013, Metadigm terminated Plaintiff and other workers from employment at two of its facilities in the State of Georgia. (D.I. 1 ¶ 7) Three days later, on March 21, 2013, Metadigm filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Northern Georgia. (*Id.* at ¶ 8) Plaintiff filed adversary proceedings against Metadigm on March 27, 2013 in that same court. (*Id.* at ¶ 9) Thereafter, on April 29, 2013, Plaintiff brought this action against NCP, seeking relief on the grounds that NCP failed to give him and roughly 150 other employees the 60 days' notice required under the WARN Act. (*Id.* at ¶ 10)

## II. The WARN Act

Congress enacted the WARN Act in 1986 in response to extensive worker dislocation occurring throughout the 1970s and 1980s as a result of companies being acquired, merging, or closing. *See In re APA Transp. Corp. Consol. Litig.*, 541 F.3d 233, 239-40 (3d Cir. 2008). Not only did employees working at these companies often lose their jobs without any notice, but at times the projected closing was actively concealed from the employees. *See Hotel Employees & Rest. Employees Int'l Union Local 54 v. Elsinore Shore Associates*, 173 F.3d 175, 182 (3d Cir. 1999). Thus the stated purpose of the WARN Act is "to allow workers to adjust to the prospective loss of employment, to seek and obtain alternative jobs and . . . to enter skill training or retraining that will allow [them] to successfully compete in the job market." *Id.* (internal quotation marks omitted). Therefore, the "thrust of WARN is to give fair warning in advance of

prospective plant closings." *Id.*

Giving effect to this intent, the WARN Act requires that employers employing at least 100 full time employees provide 60 days written notice prior to a plant shutdown or a mass layoff. *See* 29 U.S.C. § 2101 *et seq.* Employers that violate the WARN Act's notice requirement are liable to the affected workers for each day notice is not provided, for up to 60 days. *See* 29 U.S.C. § 2104(a).

## LEGAL STANDARDS

### I. Rule 12(b)(6)

The sufficiency of pleadings for non-fraud cases is governed by Rule 8 of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, courts conduct a two-part analysis. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, courts separate the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. This step requires courts to draw all reasonable inferences in favor of the non-moving party. *See Maio v. Aetna, Inc.*, 221 F.3d 472, 500 (3d Cir. 2000). However, the Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

Second, courts determine "whether the facts alleged in the complaint are sufficient to

3

show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This is a context-specific determination, requiring the court "to draw on its judicial experience and common sense." *Id.* at 679. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (internal quotation marks omitted). Finally, although a non-fraud claim need not be pled with particularity or specificity, that claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 555.

## II. <u>Venue</u>

A court may dismiss a lawsuit for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). For purposes of venue under the general venue statute, 28 U.S.C. § 1391(c)(2), a corporation "reside[s] . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." The moving party has the burden of proving that venue is improper. *See Myers v. Am. Dental Ass'n*, 695 F.2d 716, 725 (3d Cir. 1982).

## III. Single Employer Liability Under the WARN Act

Plaintiff grounds his theory for recovery under the WARN Act on the basis that NCP and Metadigm acted as a single employer when effecting the mass layoffs. (D.I. 1 ¶ 38) In order to recover against NCP, a legally distinct company, Plaintiff must show that NCP and Metadigm acted as a "single employer" in making the wrongful termination. *See Pearson v. Component Tech. Corp.*, 247 F.3d 471, 477-78 (3d Cir. 2001). Courts in the Third Circuit analyze this issue by employing a five-factor balancing test set forth in the Department of Labor's ("DOL") regulations issued under the WARN Act. *See id.* at 489. The DOL regulation provides that:

> Under existing legal rules, independent contractors and subsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as a part of the parent or contracting company depending upon the degree of their independence from the parent. Some of the factors to be considered in making this determination are (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations.

20 C.F.R. § 639.3(a)(2). These factors "are meant as a nonexhaustive list" so as to allow courts to "[exercise] the flexibility that this area of law requires." *Pearson*, 247 F.3d at 491. The DOL balancing test therefore is not a "mechanical exercise" and is "ultimately an inquiry into whether the two nominally separate entities operated at arm's length." *Id.* at 504.

Generally, if only the first two factors are present – common ownership coupled with common management – liability is not established. *See id.* at 494. The last three factors – de facto exercise of control, unity of personnel policies emanating from a common source, and dependency of operations – are often the determinative factors. *See In re APA Transport*, 541 F.3d at 244. Among these three factors, de facto exercise of control is the most important, and a

5

"particularly striking" showing of de facto control can warrant liability even in the absence of the other factors. *Pearson*, 247 F.3d at 504. The de facto control factor involves a determination as to whether one company "was the decision-maker responsible for the employment practice giving rise to the litigation." *In re APA Transp.*, 541 F.3d at 245 (internal quotation marks omitted).

The fourth factor looks to whether there was a unity of personnel policies, and is "analogous to a determination of whether the companies had a centralized control of labor operations." *Young v. Fortis Plastics, LLC*, 2013 WL 5406276, at *6 (N.D. Ind. Sept. 24, 2013). The overall question is "whether the companies actually functioned as a single entity with regard to [their] relationship[ ] with employees." *In re APA Transp.*, 541 F.3d at 245 (internal quotation marks omitted). This inquiry considers "whether the two companies in question engaged in centralized hiring and firing, payment of wages, and personnel and benefits recordkeeping." *Id.* Nevertheless, "the mere fact that the subsidiary's chain-of-command ultimately results in the top officers of the subsidiary reporting to the parent corporation does not establish the kind of day-to-day control necessary to establish an interrelation of operations." *Pearson*, 247 F.3d at 501.

Finally, the fifth factor considers whether there was a dependency of operations between the two companies. Courts must look to the "existence of arrangements such as the sharing of administrative or purchasing services, interchanges of employees or equipment, and commingled finances." *In re APA Transp.*, 541 F.3d at 245 (internal quotation marks omitted). This factor "cannot be established [merely] by the parent corporation's exercise of its ordinary powers of ownership, i.e; to vote in directors and set general policies." *Pearson*, 247 F.3d at 501. Instead,

6

this factor requires that "plaintiffs [] establish the existence of what was known at common law as a 'master-servant' agency relationship." *Id.*

## DISCUSSION

Defendant moves to dismiss the complaint by arguing that: (i) Plaintiff has not alleged facts sufficient to support an inference that Defendant can be held liable as a single employer under the DOL test (D.I. 9 at 5-6); (ii) Plaintiff failed to plead essential elements of a WARN Act claim by not alleging the length of his or any of the other proposed class member's tenures with Metadigm (*id.* at 15); and (iii) under the WARN Act's special venue provision, 29 U.S.C. § 2104(a)(5), venue is improper and the complaint should be dismissed, or in the alternative, transferred. (*id.* at 17).

### I. Single Employer Liability

Defendant does not dispute that Plaintiff has adequately pled facts establishing the first two prongs of the DOL test. (*Id.* at 5; *see also* D.I. 1 ¶ 39(a) (satisfying common ownership); *id.* at ¶¶ 3, 39(b)(i)-(iii) (satisfying common management)) Instead, Defendant argues that Plaintiff has made no showing under any of the last three factors – de facto exercise of control, unity of personnel policies, dependency of operations – and, thus, the case should be dismissed. (D.I. 9 at 5)

Plaintiff argues that "the directness of NCP's control over the activities at Metadigm is exceptional." (D.I. 11 at 8) Plaintiff contends that it has pled sufficient facts which, taken as true, demonstrate that NCP made or authorized the decision to terminate the Metadigm employees. (D.I. 1 ¶¶ 23, 25, 38-40, 42) For example, Plaintiff alleges that NCP's thorough control over Metadigm is evidenced by its pattern of acquiring companies, renaming them as part

7

of a Metadigm brand, and creating Metadigm Holdings to effectuate NCP's control. (*Id.* at ¶¶ 17-22) Plaintiff also alleges that NCP exerted control by installing its own executives as the chief executive, vice-president, treasurer, and board members for all three Metadigm companies (D.I. 11 at 1-2, 8; D.I. 1 ¶ 39(b)(i)-(iii)), ultimately installing four of the six board members of Services (D.I. 1 ¶ 3). Additionally, NCP's Operational Partner, Craig Kirsch, allegedly oversaw and managed Metadigm by serving as a bridge to the CEO (*id.* at ¶¶ 5-6, 39(c)(iv)), and Metadigm paid NCP $75,000 (plus expenses) to be managed by NCP (*id.* at ¶ 39(c)(ii)).

Defendant counters that to the extent Plaintiff is relying on the fact that NCP officers sat on Metadigm's board, Plaintiff has failed to plead facts showing that these individuals were wearing their NCP "hats" when they participated in the Metadigm decision to terminate the employees. (D.I. 13 at 7) Defendant adds that a general deficiency in Plaintiff's effort to plead the final three factors, including de facto exercise of control, is that it ultimately relies on nothing more than the allegation of common officers and directors between NCP and Metadigm. (*See id.* at 6-9)

The Court concludes that, taking the complaint's well-pleaded factual allegations as true and drawing all reasonable inferences from those facts in Plaintiff's favor, Plaintiff has stated a plausible claim that NCP and Metadigm should be treated as a single employer for purposes of the WARN Act. It is undisputed that the first two factors of the five-factor test – common ownership, and common directors and/or officers – are present here. Skipping ahead to the fourth and fifth factors – unity of personnel policies and dependency of operations – Plaintiff's allegations are wholly conclusory. (*See* D.I. 1 at ¶ 39(d)-(e); *see also Iqbal*, 556 U.S. at 678 (("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of

8

action will not do.")

Turning to the third factor, de facto exercise of control, the Court concludes that Plaintiff has offered adequate allegations, and this conclusion, in this case, tilts the overall balance in favor of Plaintiff. The totality of the facts alleged in the complaint support a plausible inference that NCP "disregard[ed] the separate legal personality" of Metadigm. *Pearson*, 247 F.3d at 496. In reaching this conclusion, the Court disagrees with Defendant's contention that facts which satisfy the first two prongs cannot also be relied on to show that the third prong, de facto control, is satisfied as well. Given "the flexibility that this area of law requires," *id.* at 491, and the non-exhaustive nature of the listed factors, *see id.* at 478, Defendant's approach is overly rigid. Plaintiff alleges that NCP constructed a brand (Metadigm) and used the Metadigm companies as alter egos in order to dominate a particular section of the energy market (D.I. 1 ¶¶ 2, 39(c)(i)), including by: hiring an executive to identify prime acquisition companies, buying these companies, and then folding them into a single corporate chain (*id.* at ¶ 2-4); creating a holding company purely for the purpose of managing these companies (*id.* at ¶ 18); populating at least one of the Metadigm companies (Services) with enough NCP executives to comprise a majority on its board (*id.* at ¶ 3) and installing the same executives in the same important positions in the other companies (Holdings and Engineering) (*id.* at ¶¶ 3, 39(b), 39(c)(iv)), including positions involving closely overseeing the operations, finances, and strategy of Metadigm (*id.* at ¶ 6). In context, this alleged pattern of branding, acquisition, and control, is sufficient to render plausible the allegation that the relationship between Metadigm and NCP was not at arm's length.

Accordingly, the Court will deny Defendant's motion to dismiss for failure to state a claim on the theory of single employer liability.

9

## II. Claim Elements Under the WARN Act

Defendant further contends that the complaint "fails to allege that at each of the two sites, at least 50 of the affected employees had been employed for at least six of those preceding months, which is essential to stating a claim under the WARN Act." (D.I. 9 at 15) Defendant adds that "Plaintiff fails to allege the length of his or any of the proposed class members' tenure with the actual employer." (*Id.*) It follows, in Defendant's view, that Plaintiff has failed to plead the essential elements of a WARN Act claim for relief.

The Court disagrees. The WARN Act prohibits employers from ordering a plant closing or mass layoff without providing 60 days of notice to affected employees. *See* 29 U.S.C. § 2102(a). Under § 2101(a)(1), an "employer" is defined as "any business enterprise that employs ... 100 or more employees, excluding part-time employees; or ... 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)." Under § 2101(a)(2) a "plant closing" "means the ... shutdown of a single site of employment, ...[resulting] in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees," while a "mass layoff" is defined as:

> [A] reduction in force which ... is not the result of a plant closing;
> and ... results in an employment loss at the single site of
> employment during any 30-day period for ... at least 33 percent of
> the employees (excluding any part-time employees); and ... at
> least 50 employees (excluding any part-time employees; or ... at
> least 500 employees (excluding any part-time employees).

*Id.* at (a)(3). Finally, an "affected employee" is defined broadly as any "employee[] who may reasonably be expected to experience an employment loss as a consequence of a proposed plant

10

closing or mass layoff by their employer." *Id.* at (a)(5).

Pursuant to these statutory definitions, Plaintiff has adequately alleged that Defendant is an employer (D.I. 1 ¶ 38), that Defendant effected a "mass layoff" and/or "plant closing" at one or more facilities (*id.* at ¶ 40), and that Plaintiff and the proposed class members number among the "affected employees" (*id.* at ¶¶ 42, 43). Defendant's argument to the contrary is essentially that the statute does not include part-time employees as "employees" for purposes of the minimum number of employees required in order to trigger WARN Act obligations, *see* 29 U.S.C. § 2101(a)(3) (excluding part-time employees from calculation of job losses), and Plaintiff does not affirmatively allege that he or other class members are not part-time employees, *see id.* § 2101(a)(8) (defining part-time employee as "an employee who is employed for an average of fewer than 20 hours per week or who has been employed for fewer than 6 of the 12 months preceding the date on which notice is required"). But, again, the complaint alleges that at least 150 "employees" were terminated at the two Georgia sites, and there is no reason (on a motion to dismiss) to read Plaintiff's allegation of "employee" as anything other than the statutory definition of "employee" (and not as "part-time employees"). (*See* D.I. 1 ¶ 7) Indeed, to the contrary, the complaint expressly alleges that it is "excluding 'part-time employees,' as that term is defined by 29 U.S.C. § 2101(a)(8)." (*Id.* ¶ 41) Plaintiff has adequately pled the elements of his WARN Act claim.

### III. Venue

Defendant argues in the alternative that the Court should dismiss or transfer the litigation because venue is improper under the WARN Act's venue provision, 29 U.S.C. § 2104(a)(5). (*See* D.I. 9 at 17-18) Defendant contends that, like the venue provision contained in Title VII, 42

11

U.S.C. § 2000e-5(f)(3), the WARN Act's venue provision is the "exclusive basis on which venue may be established for a WARN Act claim." (D.I. 9 at 17) While the general venue provision, 28 U.S.C. § 1391(b)(1), provides that a civil action "may be brought in . . . a judicial district in which any defendant resides," the WARN Act's venue provision, § 2104(a)(5), provides that:

> A person seeking to enforce . . . liability [under the WARN Act], including a representative of employees or a unit of local government aggrieved under paragraph (1) or (3), may sue either for such person or for other persons similarly situated, or both, in any district court of the United States for any district in which the violation is alleged to have occurred, or in which the employer transacts business.

Defendant continues by asserting that although it is a Delaware corporation (*see* D.I. 1 ¶ 14) venue is improper because the WARN Act violation is not alleged to have occurred here and NCP does not transact business in Delaware (*see* D.I. 9 at 17; *id.* at ex. A).

Plaintiff counters that venue is proper in Delaware because of the general venue statute. (D.I. 11 at 17) To Plaintiff, the WARN Act's venue provision supplements, rather than restricts, the general venue statute. (*See id.*) Plaintiff argues that this is consistent with how courts typically interpret special venue provisions absent specific evidence to the contrary. (*See id.*) (citing cases)

The Court agrees with Plaintiff. There is no language of exclusivity or restriction in the WARN Act venue provision. *See Farmers Bank of State of Del. v. Bell Mortgage Corp.*, 452 F. Supp. 1278, 1280-81 (D. Del. 1978) (finding that venue provision of RICO Act does not restrict general venue provision which identifies fora where claim "may" be brought). Nor is there other specific evidence contradicting a view that the general and specific venue provisions at issue here supplement one another. Delaware is where NCP, as a Delaware corporation, resides. "The

most convenient forum for a defendant is normally the forum of residence, and it would take a very powerful reason ever to suggest that Congress would have meant to eliminate [that] venue." *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 200 (2000). Defendant presents no evidence that Congress meant to eliminate this forum for WARN Act claims.

Defendant's analogy to Title VII's venue provision is inapt. (*See* D.I. 9 at 17) Unlike the WARN Act's venue provision, Title VII's special venue provision, § 2000e-5(f)(3), lists the judicial districts in which an action may be brought – "in any judicial district . . . in which the unlawful employment practice is alleged to have been committed, . . . the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice" – and then adds that if "the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office." With respect to Title VII claims, then, allowing venue under the general venue statute, 28 U.S.C. § 1391, would conflict with Title VII's specific requirement that a plaintiff first look to the three fora listed in Title VII's specific venue provision. Hence, Title VII's venue provision is restrictive – *see, e.g.*, *Stebbins v. State Farm Mutual Automobile Insurance Company*, 413 F.2d 1100 (D.C. Cir. 1969); *Thurmon v. Martin Marietta Data Systems*, 596 F. Supp. 367 (M.D. Pa. 1984) – in a way that the WARN Act's venue provision is not.

Therefore, the Court will deny Defendant's motion to dismiss or transfer for improper venue.

## **CONCLUSION**

For the reasons discussed above, the Court will deny Defendant's motion to dismiss. An appropriate order follows.