IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DANIEL HAMPTON, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>NAVIGATION CAPITAL PARTNERS, INC.,<br><br>    Defendants. | Civil Action No. 1:13-747-LPS |

**DEFENDANT NAVIGATION CAPITAL PARTNERS, INC.'S
<u>OPENING BRIEF IN SUPPORT OF MOTION TO TRANSFER CASE</u>**

OF COUNSEL:

James H. Coil III (Admitted *pro hac vice*)
Flora Manship (Admitted *pro hac vice*)
KILPATRICK TOWNSEND
& STOCKTON LLP
Suite 2800
1100 Peachtree Street NE
Atlanta, Georgia 30309-4528
(404) 815-6500 – Telephone
jcoil@kilpatricktownsend.com
fmanship@kilpatricktownsend.com

Dated: June 11, 2015
1192486 / 40338

Kathleen Furey McDonough (#2395)
Michael B. Rush (#5061)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951
(302) 984-6000 – Telephone
kmcdonough@potteranderson.com
mrush@potteranderson.com

*Attorneys for Defendant*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | STATEMENT OF NATURE AND STAGE OF PROCEEDINGS | 1 |
| II. | BACKGROUND | 2 |
| III. | SUMMARY OF THE ARGUMENT | 3 |
| | ARGUMENT | 4 |
| I. | LEGAL STANDARD | 4 |
| II. | THIS ACTION COULD HAVE BEEN BROUGHT IN THE NORTHERN DISTRICT OF GEORGIA | 5 |
| III. | TRANSFER TO THE NORTHERN DISTRICT OF GEORGIA WOULD FURTHER PRIVATE INTERESTS | 6 |
| | A. Plaintiff's Choice of Forum Should Not Be Accorded Deference | 6 |
| | B. Defendant's Preference and Both Parties' Location Favor Transfer | 7 |
| | C. The Claims Have A Center of Gravity In The Northern District of Georgia | 7 |
| | D. The Convenience of the Parties Favors Transfer | 7 |
| | E. The Convenience of Third-Party Witnesses Favors Transfer | 8 |
| | F. The Key Sources of Proof Are Located In The Northern District of Georgia | 9 |
| IV. | TRANSFER TO THE NORTHERN DISTRICT OF GEORGIA WOULD FURTHER THE PUBLIC INTEREST | 10 |
| V. | THE *JUMARA* ANALYSIS FAVORS TRANSFER | 11 |
| | CONCLUSION | 11 |

# **TABLE OF AUTHORITIES**

**CASES**

**Page(s)**

*CES Publ'g Corp. v. Dealerscope, Inc.*,
   544 F. Supp. 656 (E.D. Pa. 1982) ...................................................................................6

*ChriMar Sys., Inc. v. Cisco Sys., Inc.*,
   C.A. No. 11-1050 (GMS), 2013 WL 828220 (D. Del. Mar. 6, 2013) ..................................6, 8

*Downing v. Globe Direct LLC*,
   C.A. No. 09-693 (JAP), 2010 WL 2560054 (D. Del. June 18, 2010).............................7, 8, 11

*Gen. Instrument Corp. v. Mostek Corp.*,
   417 F. Supp. 821 (D. Del. 1976)........................................................................................6

*In re Link_A_Media Corp.*,
   662 F.3d 1221 (Fed. Cir. 2011).....................................................................................10, 11

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995)..............................................................................................5, 10

*Nalco Co. v. AP Tech Grp. Inc.*,
   C.A. No. 13-1063 (LPS), 2014 WL 3909114 (D. Del. Aug. 8, 2014)..............................10, 11

*Nottenkamper v. Modany*,
   C.A. No. 14-672 (GMS), 2015 WL 1951571 (D. Del. Apr. 29, 2015)....................................10

*OpenTV, Inc. v. Netflix, Inc.*,
   C.A. No. 12-1733 (GMS), 2014 WL 1292790 (D. Del. Mar. 31, 2014) ......................6, 10, 11

*Semcon Tech, LLC v. Intel Corp.*,
   C.A. No. 12-531 (RGA), 2013 WL 126421 (D. Del. Jan. 8, 2013).........................................11

**STATUTES**

28 U.S.C. § 1391................................................................................................................5

28 U.S.C. § 1391(b) ..........................................................................................................5

28 U.S.C. § 1404(a) ..............................................................................................1, 2, 4, 5

29 U.S.C. § 2104(a)(5).......................................................................................................5

Worker Adjustment and Retraining Notification (WARN Act) ............................................ *passim*

Defendant Navigation Capital Partners, Inc. ("Defendant") submits this brief in support of its Motion to Transfer Case pursuant to 28 U.S.C. Section 1404(a), requesting that this Court transfer this case to the U.S. District Court for the Northern District of Georgia. The case has no substantive connection to Delaware, and all relevant factors overwhelmingly favor transfer to Georgia.

I.  **STATEMENT OF NATURE AND STAGE OF PROCEEDINGS**

Defendant Navigation Capital Partners ("NCP" or "Defendant") is a private equity firm that holds investment interests in separately incorporated entities. Plaintiff Daniel Hampton ("Plaintiff") is a former employee of Metadigm, one of NCP's former portfolio companies in Georgia, who was terminated when Metadigm filed for bankruptcy in the U.S. District Court for the Northern District of Georgia in 2013.

In March 2013, Plaintiff filed a claim for damages against the Metadigm debtors in the bankruptcy proceeding in Georgia on behalf of all Metadigm employees for violations of the Worker Adjustment and Retraining Notification ("WARN") Act. That claim is still pending before the bankruptcy court in Georgia. All of Metadigm's records are in the possession of the bankruptcy trustee in that proceeding.

On April 29, 2013, Plaintiff, allegedly on behalf of himself and others similarly situated, commenced this action by filing his Class Action Complaint (the "Complaint") (D.I. 1), in which he alleges that NCP, in its capacity as a joint-employer of Metadigm's employees, violated the WARN Act by not giving prior required advance notice of the portfolio company's shutdown. NCP filed its Answer to the Complaint on October 2, 2014. (D.I. 23).

This case is still in an early stage. Formal discovery has not commenced, and the parties have requested the Court to enter a scheduling order that tolls any proceedings for 120 days to enable the parties to engage in mediation.[1]

Pursuant to 28 U.S.C. Section 1404(a), NCP moves to transfer this case to the U.S. District Court for the Northern District of Georgia, where the case would proceed should the parties be unable to successfully resolve the matter through mediation. This is NCP's opening brief in support of that motion.

## II.   BACKGROUND

This case arose out of Plaintiff's employment with Metadigm[2] in Atlanta, Georgia. (D.I. 1 ¶ 15). Upon information and belief, Plaintiff is a citizen of the State of Georgia.[3] According to the Complaint, the putative class is comprised of other former employees of Metadigm who worked in either Atlanta, Georgia or Covington, Georgia. *Id.* ¶¶ 10, 16. On or about March 18, 2013, Metadigm closed the Atlanta and Covington facilities and filed for bankruptcy in the Northern District of Georgia. *Id.* ¶¶ 7-8. Plaintiff claims that the closure of the Atlanta and Covington facilities, without providing 60 days advance written notice, violated the Georgia Plaintiff's and other putative class members' rights under the WARN Act. *Id.* ¶ 10. Thus, witnesses and evidence relevant to Metadigm's shutdown will be material to establishing class

---

[1] In accordance with the Court's instructions, on May 28, 2015, the parties submitted a proposed scheduling order to the Court (D.I. 25), but as of the time of the filing of this brief, the Court had not yet approved the proposed scheduling order.

[2] In the Complaint, Plaintiff uses the term "Metadigm" to refer collectively to Holdings, Services and Engineering. D.I. 1, ¶ 9, n.1. Although Plaintiff alleges that he and the purported class members "worked at the Metadigm facilities in Georgia," the Complaint is unclear as to which Metadigm entity actually employed Plaintiff and the purported class members. For ease of reference and for the purposes of this Motion, Defendant will use the term "Metadigm" as Plaintiff has used that term, to refer collectively to Holdings, Services, and Engineering.

[3] In his Complaint, Plaintiff does not indicate where he presently resides and only alleges that he worked at Metadigm's Atlanta, Georgia facility. (D.I. 1 at ¶ 15).

certification, and ultimately a violation of the WARN Act, and are the first area of inquiry in this matter.

Plaintiff seeks to impose "single employer" liability against NCP, a small private equity firm headquartered in Atlanta, Georgia, which was the majority shareholder of Metadigm.  *Id.* ¶¶ 1, 17.  Thus, witnesses and documents regarding the business dealings between NCP and Metadigm will also be critical to establishing liability in this case.  As will be seen, both parties, all of the documents, and most of the material witnesses are located in Georgia, and there is no connection with Delaware other than the fact that NCP is incorporated there.

Among other things, in support of his argument that NCP was a "single employer" with Metadigm, Plaintiff claims that NCP and Metadigm shared common officers and directors, including Robert Shively, Larry Mock, Eerik Giles, and Craig Kirsch.  *Id.* ¶ 39(b).  Messrs. Mock and Giles reside in the Atlanta metro area.  Declaration of Eerik Giles, filed herewith ("Giles Decl."), ¶ 5.  Upon information and belief, Mr. Shively also works in the Atlanta area.  *Id.* ¶ 7.  Upon information and belief, Mr. Kirsch resides in Pittsburgh, Pennsylvania.  *Id.* ¶ 5.

### III.    SUMMARY OF THE ARGUMENT

Plaintiff is a resident and citizen of the Atlanta, Georgia metro area.  NCP is a Delaware corporation with its principal place of business in Atlanta, Georgia.  All or nearly all of NCP's corporate witnesses are residents and citizens of the Atlanta area.  Numerous third-party witnesses associated with Metadigm are also located in the Atlanta area.  Aurora Management Partners, which provided management and restructuring services to Metadigm in March of 2013, maintains its corporate office in Atlanta, Georgia.  Robert Shively, who was the CEO of Metadigm, on information and belief, works in the Atlanta area.  The events giving rise to this lawsuit as alleged by Plaintiff—the shutdown of the Atlanta and Covington facilities—occurred

in the Atlanta metro area, affecting Atlanta-area residents and workers, whom Plaintiff now seeks to represent.

Apart from Defendant's state of incorporation, this case has no connection to Delaware whatsoever: Defendant does not conduct business in Delaware nor does it have a corporate presence in Delaware, no events relevant to the litigation occurred in Delaware, and no witnesses reside in Delaware. There is no substantive connection to Delaware that would make it a convenient forum for any of the parties, including Plaintiff, and the case is overwhelmingly linked to the Atlanta, Georgia area.

Thus, this case should be transferred to the Northern District of Georgia.

## ARGUMENT

This litigation presents a compelling case for transfer because both parties are located in the Northern District of Georgia, the Metadigm facilities that shut down were located in the Northern District of Georgia, the Metadigm bankruptcy proceeding is in the Northern District of Georgia, all of the relevant documents and information are located in the Northern District of Georgia, nearly all of the anticipated third-party witnesses are located in the Northern District of Georgia, and there is no substantive connection to the District of Delaware. Virtually every relevant consideration favors transfer to Georgia.

### I.  LEGAL STANDARD

28 U.S.C. Section 1404(a) authorizes a district court to "transfer any civil action to any other district or division where it might have been brought" for "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Thus, the threshold question is whether the action could have been brought in the proposed transferee venue. Then, the court

4

must assess whether transfer would further the interests of justice by favoring the convenience of parties and witnesses.

In *Jumara v. State Farm Ins. Co.*, the Third Circuit articulated both private-interest factors and public-interest factors that courts consider in determining whether transfer would further the interests of justice. 55 F.3d 873, 879 (3d Cir. 1995). The private-interest factors are: (1) the plaintiff's forum preference; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) "the convenience of the parties as indicated by their relative physical and financial condition"; (5) the convenience of witnesses, to the extent any may be unavailable for trial in one of the fora; and (6) the location of books and records, to the extent any could not be produced in one of the fora. *Id.*

The public-interest factors are: (1) "the enforceability of the judgment"; (2) "practical considerations that could make the trial easy, expeditious, or inexpensive"; (3) "the relative administrative difficulty in the two fora resulting from court congestion"; (4) "the local interest in deciding local controversies at home"; (5) "public policies of the fora"; and (6) "familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879-80.

## II. THIS ACTION COULD HAVE BEEN BROUGHT IN THE NORTHERN DISTRICT OF GEORGIA

Under the general venue statute, 28 U.S.C. Section 1391, a civil action may be brought in any judicial district "in which any defendant resides," or "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). Under the WARN Act's venue provision, a civil action may be brought in any judicial district "in which the violation is alleged to have occurred, or in which the employer transacts business." 29 U.S.C. § 2104(a)(5).

As NCP's headquarters and principal place of business is in the Northern District of Georgia, it therefore resides and transacts business in the Northern District of Georgia. Moreover, the alleged violation of the WARN Act—the shutdown of the Atlanta and Covington facilities—occurred in the Northern District of Georgia. Thus, under both the general venue statute and the WARN Act, this action could have been brought in the Northern District of Georgia.

### III.   TRANSFER TO THE NORTHERN DISTRICT OF GEORGIA WOULD FURTHER PRIVATE INTERESTS

Each of the private-interest factors outlined in *Jumara* weighs strongly in favor of transfer here.

#### A.   Plaintiff's Choice of Forum Should Not Be Accorded Deference.

Although courts ordinarily accord substantial weight to a plaintiff's choice of forum, when a plaintiff brings suit outside of the plaintiff's home forum, its preference is "entitled to less than the paramount consideration." *See OpenTV, Inc. v. Netflix, Inc.*, C.A. No. 12-1733 (GMS), 2014 WL 1292790, at *2 (D. Del. Mar. 31, 2014) (holding court would not accord substantial weight to plaintiff's choice of venue in Delaware, because its principal place of business was in California, and because California was location of both parties' principal places of business, this factor weighed in favor of transfer) (internal citation omitted); *ChriMar Sys., Inc. v. Cisco Sys., Inc.*, C.A. No. 11-1050 (GMS), 2013 WL 828220, at *4 (D. Del. Mar. 6, 2013); *see also Gen. Instrument Corp. v. Mostek Corp.*, 417 F. Supp. 821, 822-23 (D. Del. 1976); *CES Publ'g Corp. v. Dealerscope, Inc.*, 544 F. Supp. 656, 662 (E.D. Pa. 1982) ("[P]laintiff's choice is entitled to less weight where . . . plaintiff is not a resident of the forum and the cause of action did not arise here"). Therefore, because Plaintiff is on information and belief a resident of Georgia, not Delaware, and the cause of action did not arise in Delaware,

Plaintiff's choice of forum in Delaware should not be accorded deference. In addition, because Plaintiff is bringing this case on behalf of a class, his choice of forum is entitled to even less deference. *Downing v. Globe Direct LLC*, C.A. No. 09-693 (JAP), 2010 WL 2560054, at *3 (D. Del. June 18, 2010) (granting motion to transfer where Delaware was not plaintiff's home state, operative facts occurred outside of Delaware, and plaintiff brought suit on behalf of other class members, who resided outside of Delaware).

### B. **Defendant's Preference and Both Parties' Location Favor Transfer**.

Defendant is, and always has been, headquartered in the Northern District of Georgia. Giles Decl. ¶ 3. It has no employees, physical operations, customers, or clients in Delaware, and it does not transact business there. *Id.* ¶ 4. Defendant anticipates that all of its witnesses and relevant documents and materials that are expected to be produced in this litigation are in the Northern District of Georgia. Plaintiff, as noted, upon information and belief, resides in the Northern District of Georgia. This factor therefore favors transfer.

### C. **The Claims Have A Center of Gravity In The Northern District of Georgia**.

The alleged facts giving rise to Plaintiff's claim—the shutdown of the Atlanta and Covington Metadigm facilities—took place in the Northern District of Georgia. Plaintiff and the putative class members all worked in the Northern District of Georgia. None worked in Delaware, and Plaintiff's WARN claim has no connection to Delaware. Because the alleged claim arose in the Northern District of Georgia, this factor weighs heavily in favor of transfer.

### D. **The Convenience of the Parties Favors Transfer**.

In considering the convenience of the parties, courts look to "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the

7

relative ability of each party to bear these costs in light of its size and financial wherewithal." *ChriMar Sys., Inc.*, 2013 WL 828220, at *5 (internal citations omitted).

Both parties are located in the Northern District of Georgia, and neither maintains any physical presence in Delaware. Although the parties have not yet exchanged initial disclosures, Defendant anticipates naming at least the following individuals who may have knowledge relevant to the case: Larry Mock, partner of NCP, and Eerik Giles, partner of NCP. Both of these individuals work and reside in the Northern District of Georgia. Giles Decl. ¶ 5.

Although Defendant is not yet aware of the identity, location, and citizenship of all of the putative class members, given that all were employed in the Northern District of Georgia until March of 2013, it is reasonable to assume that at least the majority still reside in that district—not Delaware, since Metadigm did not do business in Delaware.

If the case is not transferred, these witnesses—like Plaintiff and numerous putative class members—will have to travel a significant distance to Delaware.[4] Thus, the Northern District of Georgia is a more convenient venue for the parties. *Downing*, 2010 WL 2560054, at *4 (noting that "litigating this matter in the District of Massachusetts would be significantly more convenient and less burdensome for all parties" where—like in this case as to Georgia—"the claim arose in Massachusetts, the relevant conduct took place there, Plaintiff and the class members reside there, Globe is headquartered there, [a relevant third party] is located there, and the relevant employees at Globe are located there").

---

[4] Lead counsel for both parties are also located outside of Delaware. Defendant's lead counsel is located in the Northern District of Georgia, and while Plaintiff's lead counsel is located in New York, Plaintiff and his counsel in this case are currently prosecuting the same claim against Metadigm in the bankruptcy proceeding in the Northern District of Georgia.

8

E.      **The Convenience of Third-Party Witnesses Favors Transfer.**

Defendant anticipates that several third-party witnesses will be former employees or officers of Metadigm, such as Robert Shively (CEO) and Don King (CFO). Since Metadigm is in bankruptcy, all costs of travel to Delaware would have to be borne by these witnesses individually.  Additionally, Defendant anticipates that employees or officers of Aurora Management Company, the management company that consulted with respect to Metadigm's management in 2013, will be third-party witnesses.  Aurora's corporate office, and these witnesses, on information and belief, are located in the Northern District of Georgia. *See* Giles Decl. ¶ 8.

Defendant has specifically identified several third-party witnesses that reside in the Northern District of Georgia.  Defendant is unaware of any such witnesses who reside in Delaware or are subject to the subpoena power of this Court.  These facts weigh strongly in favor of transfer.

F.      **The Key Sources of Proof Are Located In The Northern District of Georgia.**

This case will turn on employment records of Metadigm and other documents showing the relationship between Metadigm and NCP.  While Defendant is in possession of documents and communications it exchanged with Metadigm, it is not in possession of Metadigm's employment and payroll records, or other business records that may be relevant to the single-employer issue.  Metadigm's bankruptcy proceeding is currently pending in the U.S. Bankruptcy Court for the Northern District of Georgia. *See* D.I. 1, ¶ 8.  Because Metadigm is in bankruptcy, these documents are in the possession, custody, or control of Metadigm's bankruptcy trustee, who is located in Atlanta, Georgia.  Upon information and belief, information and documents relevant to this case will need to be subpoenaed from Metadigm's trustee.  Before the Bankruptcy Court for the Northern District of Georgia, Plaintiff is currently litigating another

9

case against Metadigm for the same alleged violation of the WARN Act Plaintiff asserts here against Defendant. *See id.* ¶ 9. The issue of whether a WARN Act violation occurred is an identical issue in both lawsuits.

Thus, key documents and sources of proof are located in the Northern District of Georgia. And "[w]hile advances in technology may alter the weight given to these factors, it is improper to ignore them entirely." *In re Link_A_Media Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011); *see Nalco Co. v. AP Tech Grp. Inc.*, C.A. No. 13-1063 (LPS), 2014 WL 3909114, at *2 (D. Del. Aug. 8, 2014).

### IV. TRANSFER TO THE NORTHERN DISTRICT OF GEORGIA WOULD FURTHER THE PUBLIC INTEREST

Most of the *Jumara* public-interest factors are neutral or inapplicable to this case. A judgment in either jurisdiction will be equally enforceable. Although Delaware has some public policy interest in serving as the venue for companies incorporated in this state, that consideration is outweighed by the transferee venue's "interest in deciding disputes that arise within its boundaries involving companies headquartered there." *OpenTV, Inc.*, 2014 WL 1292790, at *4 (internal citation and quotation omitted); *see also Nottenkamper v. Modany*, C.A. No. 14-672 (GMS), 2015 WL 1951571, at *3 (D. Del. Apr. 29, 2015) ("[I]t is a corporate entity's actual, physical location—and not its state of incorporation—that is the driving factor in the transfer analysis."). As this is a case involving a federal question and not diversity, there is no issue of applicable state law. The relative administrative difficulty resulting from court congestion is essentially the same with respect to the District of Delaware and the Northern District of Georgia, but if anything, this factor slightly favors transfer.[5]

---

[5] In 2013, the Northern District of Georgia had a slightly faster median time-to-trial of 27.4 months, compared to the District of Delaware at 27.6 months. *See* Table T-3: Median Time

As far as "practical considerations that could make the trial easy, expeditious, or inexpensive," because this dispute is between two parties located in Georgia, and involves a material third-party that was located in Georgia and is now in bankruptcy proceedings in Georgia, aggregate litigation costs will likely be lower in Georgia, where witnesses and evidence are already located, than in Delaware, and therefore this favor "weighs strongly in favor of transfer." *OpenTV, Inc.*, 2014 WL 1292790, at *4.

## V.     THE *JUMARA* ANALYSIS FAVORS TRANSFER

This case's only connection to Delaware is that it is the state of incorporation of Defendant. All other relevant factors weigh strongly in favor of transfer to the Northern District of Georgia. In such situations, transfer is proper. *See OpenTV, Inc.*, 2014 WL 1292790, at *4; *see also In re Link_A_Media Devices Corp.*, 662 F.3d at 1224; *Nalco Co.*, 2014 WL 3909114, at *1-2; *Downing*, 2010 WL 2560054, at *4; *Semcon Tech, LLC v. Intel Corp.*, C.A. No. 12-531 (RGA), 2013 WL 126421, at *5 (D. Del. Jan. 8, 2013) (granting motion to transfer, noting that there was "little beyond Plaintiff's choice of forum—which is less compelling than usual" because forum was not plaintiff's home turf, that weighed against transfer).

## CONCLUSION

Every relevant consideration, other than Plaintiff's choice of forum, is either neutral or strongly favors transfer in this case. The alleged cause of action arose at two locations, both in the Northern District of Georgia. All or nearly all witnesses, and all or nearly all documents relevant to this case, are located in the Atlanta metro area, which is in the Northern District of Georgia. Both parties, and a material third-party corporation, are located in the Northern District of Georgia. The class members Plaintiff seeks to represent are, on information and belief,

---

Intervals from Filing to Trial for Civil Cases in Which Trials Were Completed, *available at* http://www.uscourts.gov/Statistics/JudicialBusiness/2013/appendices/T03Sep13.pdf.

11

located in Georgia. Moreover, related litigation is pending in the Northern District of Georgia. Accordingly, the convenience of the Northern District of Georgia will result in litigation proceeding with greater speed and less expense, resulting in greater convenience to both parties, the third-party witnesses, and the public. For these reasons, Defendant respectfully requests that the Court grant its Motion and transfer this case to the U.S. District Court for the Northern District of Georgia.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

James H. Coil III (Admitted *pro hac vice*)
Flora Manship (Admitted *pro hac vice*)
KILPATRICK TOWNSEND
& STOCKTON LLP
Suite 2800
1100 Peachtree Street NE
Atlanta, Georgia 30309-4528
(404) 815-6500 – Telephone
jcoil@kilpatricktownsend.com
fmanship@kilpatricktownsend.com

Dated: June 11, 2015
1192486 / 40338

By: */s/ Michael B. Rush*
Kathleen Furey McDonough (#2395)
Michael B. Rush (#5061)
Hercules Plaza, Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951
(302) 984-6000 – Telephone
kmcdonough@potteranderson.com
mrush@potteranderson.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I, Michael B. Rush, hereby certify that on June 11, 2015, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on June 11, 2015, the attached document was electronically mailed to the following person(s):

>Frederick Rosner, Esquire
>Julia B. Klein, Esquire
>THE ROSNER LAW GROUP LLC
>824 Market Street, Suite 810
>Wilmington, DE 19801
>rosner@teamrosner.com
>klein@teamrosner.com

>*/s/ Michael B. Rush*
>Kathleen Furey McDonough (#2395)
>Michael B. Rush (#5061)
>POTTER ANDERSON & CORROON LLP
>Hercules Plaza, Sixth Floor
>1313 North Market Street
>P.O. Box 951
>Wilmington, DE  19899-0951
>(302) 984-6000 – Telephone
>(302) 658-1192 – Facsimile
>kmcdonough@potteranderson.com
>mrush@potteranderson.com