# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| DANIEL HAMPTON, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br> v.<br><br>NAVIGATION CAPITAL PARTNERS, INC.,<br><br>     Defendant. | Case No.:  13-00747 (LPS) |

**JOINT MOTION FOR ORDERS (I) PRELIMINARILY APPROVING THE SETTLEMENT, (II) APPROVING THE FORM AND MANNER OF NOTICE TO CLASS MEMBERS, (III) SCHEDULING A FINAL FAIRNESS HEARING, (IV) FINALLY APPROVING THE SETTLEMENT INCLUDING ATTORNEYS' FEES AND COSTS, AND (V) GRANTING FURTHER RELIEF**

For the reasons set forth in the accompanying brief and supporting documents, Plaintiff Daniel Hampton and Defendant Navigation Capital Partners, Inc. move for Orders (I) Preliminarily Approving the Settlement, (II) Approving the Form and Manner of Notice to Class Members, (III) Scheduling a Final Fairness Hearing, (IV) Finally Approving the Settlement Including Attorneys' Fees And Costs, and (V) Granting Further Relief.

Dated: September 19, 2016

          /s/ Frederick Rosner
          Frederick Rosner (#3995)
          Scott J. Leonhardt (#4885)
          **THE ROSNER LAW GROUP LLC**
          824 N. Market Street, Suite 810
          Wilmington, DE 19801
          Telephone: (302) 777-1111

          René S. Roupinian
          Jack A. Raisner
          **OUTTEN & GOLDEN LLP**

685 Third Avenue, 25th Floor
New York, New York 10017
Telephone:  (212) 245-1000

*Attorneys for Plaintiff and the Certified Class*

/s/ *James H. Coil III*
James H. Coil III
Flora Manship
**KILPATRICK TOWNSEND
& STOCKTON LLP**
Suite 2800
1100 Peachtree Street NE
Atlanta, Georgia 30309-4528
Tel: (404) 815-6500
Email: jcoil@kilpatricktownsend.com
Email: fmanship@kilpatricktownsend.com


/s/ *Kathleen Furey McDonough*
Kathleen Furey McDonough (#2395)
**POTTER ANDERSON
& CORROON LLP**
Hercules Plaza, Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951
Tel: (302) 984-6000
Email: kmcdonough@potteranderson.c*om*

*Counsel for Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| DANIEL HAMPTON, on behalf of himself and all others similarly situated,<br><br>                          Plaintiff,<br>          v.<br><br>NAVIGATION CAPITAL PARTNERS, INC.,<br><br>                          Defendant. | Case No.:  13-00747 (LPS) |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR ORDERS (I) PRELIMINARILY APPROVING THE SETTLEMENT, (II) APPROVING THE FORM AND MANNER OF NOTICE TO  CLASS MEMBERS, (III) SCHEDULING A FINAL FAIRNESS HEARING, (IV) FINALLY APPROVING THE SETTLEMENT INCLUDING ATTORNEYS' FEES AND COSTS, AND (V) GRANTING FURTHER RELIEF**

Navigation Capital Partners, Inc., ("Defendant" or "NCP") and Daniel Hampton (the "Class Representative"), on behalf of himself and the certified class, by and through their respective counsel, hereby move this Court, pursuant to Fed. R. Civ P. 23, for the entry of orders: (i) preliminarily approving the Settlement and Release Agreement dated June 28, 2016 ((Exhibit A) (the "Settlement Agreement" or the "Settlement")) among Defendant and the Class Members (as defined below) ((*see* Exhibit C (Proposed Preliminary Approval Order)) (ii) approving the form and manner of notice to Class Members of the Settlement Agreement, (Exhibit D) (iii) scheduling a fairness hearing (the "Fairness Hearing") to consider final approval of the Settlement Agreement, (iv) finally approving the Settlement Agreement (Exhibit E), and (v) granting such other and further relief as it deems just and appropriate.  In support of the Joint Motion, the Defendant and the Class Representative respectfully submit the Declaration of Rene S. Roupinian (Exhibit B) and state as follows:

**Background**

On April 29, 2013, the Class Representative filed a class-action complaint (the

"Complaint" or "WARN Action") against Defendant on behalf of himself and a putative class,

alleging that on or around March 18, 2013, Metadigm,[1] a portfolio company in which Navigation

Capital Partners, Inc. ("Defendant" or "NCP") had invested, terminated its employees without

giving them 60 days' advance notice as required by the Worker Adjustment and Retraining

Notification Act, 29 U.S.C. § 2101, *et seq.* (the "WARN Act").

On June 3, 2013, Defendant moved to dismiss the Complaint or to transfer the case to the

Northern District of Georgia. (D.I. 8, 9). The Court denied the motion in its entirety. (D.I. 20-

21). On October 2, 2014, Defendant filed its Answer. On June 11, 2015, Defendant filed a

motion seeking to transfer the case to the Northern District of Georgia (D.I. 26-28), which

Plaintiff opposed. On November 2, 2015, the parties engaged unsuccessfully in mediation in

Atlanta, Georgia. On November 16, 2015, Plaintiff sought leave to amend the Complaint to add

allegations relating to the location of Metadigm's employees. (D.I. 44). On December 2, 2015,

Plaintiff sought leave to file an early motion for partial summary judgment. (D.I. 50). On

December 7, 2015, NCP's motion to transfer was denied, Plaintiff's motion to amend the

Complaint was granted, and Plaintiff's request for leave to file early summary judgment was

denied. (D.I. 52). On December 11, 2015, Plaintiff filed his Amended Complaint. (D.I. 53).

On January 4, 2016, Defendant filed its Answer to the Amended Complaint. Defendant

denied liability and asserted several affirmative defenses, including that any obligation to give 60

days' notice was reduced because Metadigm actively sought capital or business that would have

---

[1] "Metadigm" refers to Metadigm Holdings, Inc., Metadigm Services, Inc., and Metadigm Engineering, Inc.

2

postponed or prevented the layoffs, that Defendant had a good faith and reasonable belief that its actions were lawful, and that Defendant was not a single employer with Metadigm or the employer of the putative class members.

On March 10, 2016, the Court approved the Parties' Stipulation and Ordered certification of a class defined as Plaintiff and other similarly situated former employees of Metadigm who worked at or reported to a Metadigm facility, who were terminated by Metadigm without cause on or about March 18, 2013, or within 30 days of that date in anticipation of or as the reasonably foreseeable consequence of the mass layoff or plant closing ordered by Metadigm on or about March 18, 2013, who are affected employees within the meaning of 29 U.S.C. § 210l(a)(5), and who have not filed a timely request to opt-out of the class.

Notice of the Class Action was sent to the Class on April 8, 2016 (D.I. 65), with an opt-out deadline of May 9, 2016.  No class member timely elected to opt-out of the Class. (D.I. 67). There are 160 Class Members.

On May 16, 2016, the Parties engaged in a second round of formal mediation in New York, New York, and reached a consensual resolution of this matter subject to Court approval.

### The Settlement Agreement

After much negotiation, including the two rounds of mediation, counsel for the parties agreed to resolve this matter for a payment of one million dollars ($1,000,000) (the "Settlement Amount").  The Settlement Amount is inclusive of: (1) payment to the Named Plaintiff in the amount of $10,000 as compensation for his services to the Class; (2) payment to the Contributing Class Member in the amount of $3,500 for his services to the Class, (3) payment of a maximum of $15,000 to a third-party administrator to administer the settlement, (4)  payment of attorneys' fees and expenses as set forth below (subject to approval by the Court), with (3) the balance of the

3

Settlement Amount to be distributed on a pro rata basis to the Settlement Class, including the Named Plaintiff.

The Settlement Agreement is fair and reasonable to the Class Members.  Without the Settlement, the Class Members would wait years for any potential payment on their alleged WARN Claims.  Moreover, there is no assurance that they will recover anything at all because the parties disagree as to whether Defendant was the Class Members' employer for WARN Act purposes and, if so, whether Defendant's liability would be reduced or eliminated by defenses to the WARN Act and/or equitable considerations.

From the perspective of the Defendant, the Settlement Agreement is fair and reasonable as well.  Continued litigation of the WARN Action would be protracted and expensive, and the outcome uncertain.  A trial, including with respect to the applicability of Defendant's affirmative defenses, would require both sides to engage in further extensive discovery at significant expense with inherently uncertain results at trial.

The Class Representative contends that if the Court were to find that the Class Members were entitled to even one additional day of notice than that which was provided, the Class Members would be the "prevailing parties" and therefore entitled to their attorneys' fees and costs.  In light of the inherent risks and costs associated with litigation of the WARN Action, the Defendant has determined that the proposed Settlement of the WARN Claims is fair and well within the range of reasonableness. Accordingly, the Court should approve the Settlement under Fed. R. Civ. P. 23(e).

### The Requested Approval Process

The Parties request a two-step approval process to facilitate notice to Class Members. After preliminary approval of the Settlement Agreement and the form of notice to be given to the

4

Class Members, Class Counsel will serve a notice (the "Class Notice") upon each Class Member

that describes the Settlement Agreement, and informs Class Members of their right to object to

the Settlement Agreement and of the deadlines for objecting.

After service of the Class Notice, the Parties request that the Court hold a Fairness

Hearing to consider final approval of the Settlement Agreement.

Based on the foregoing, and as set forth more fully below, the Parties submit that the

Court should approve the Settlement Agreement and the procedures proposed in this Joint

Motion.

### Essential Terms of the Proposed Settlement

In general, the essential terms of the Settlement Agreement are as follows:[2]

a) <u>Eligible Class Members</u>: Based on the books and records of Defendant and Metadigm, the Parties have determined that the Class Members eligible to share in the settlement are listed on Schedule 1 to the Settlement Agreement.  Eligible Class Members are Class Members who neither resigned nor continued to work for the business 60 or more days after March 18, 2013, which excludes certain leased employees who ceased to perform any services for Metadigm as of February 16, 2013.  The Eligible Class Members also excludes business partners and consultants.

b) <u>Settlement Amount</u>:  In full and final settlement of the Parties' disputes, on the Effective Date (defined in paragraph 4 below), Defendant shall pay the total settlement amount of one million dollars ($1,000,000) (the "Gross Settlement Amount"), to the tax qualified Settlement Fund account established by the Claims Administrator employed by Plaintiff's counsel via wire transfer within fourteen (14) calendar days after the Effective Date of this Settlement Agreement and shall comprise the "Settlement Fund." The Gross Settlement Amount shall be the maximum amount that Defendant shall pay under the terms of this Settlement Agreement. The Parties agree that any and all taxes, including Defendant's share of payroll and other applicable taxes associated with the settlement payments, including standard employer burdens on such sums paid out of wages (e.g.,

---

[2] This summary of the Settlement Agreement is qualified in its entirety by the terms and provisions of the Settlement Agreement.  To the extent that there are any inconsistencies between the description of the Settlement Agreement contained herein and the terms and the provisions of the Settlement Agreement, the Settlement Agreement shall control. Capitalized terms used in this paragraph, but not defined herein, shall have the meanings ascribed to such terms in the Settlement Agreement.

FICA, FUTA, SUTA, etc.), shall come from the Gross Settlement Amount. Defendant's payment of the Gross Settlement Amount shall settle all pending issues that were asserted or could have been asserted in the Amended Complaint in the WARN Action, including but not limited to all claims for attorneys' fees, costs, taxes, interest, a service payment to the Class Representative, and administrative costs and any other costs, expenses or obligations. Plaintiff's counsel shall be responsible for allocating the monies on a pro rata basis among the members of the settlement class. Class Members shall receive their ratable shares of any distributions received with respect to the WARN Claims, net of the Service Payment (as defined below), and Class Counsel's Expenses (as defined below).

c) Service Payments: Daniel Hampton, the Class Representative, shall receive a one-time payment of $10,000 for the services he provided to the Class and Contributing Class Member, Hans Galm, shall receive $3,500 for the services he provided to the Class in connection with the prosecution of the WARN Action (the "Service Payments"). The Service Payments will be made in addition to the Class Representatives' individualized Settlement distribution and Class Counsel's Fees will not be deducted from the Service Payment.

d) Class Counsel Fees and Expenses: Class Counsel is entitled to attorneys' fees of thirty-three and one-third percent (33 ⅓ %) of the Gross Settlement Payment net of litigation expenses (including costs associated with the production and mailing of the class notice) not to exceed $32,000.00 ("Class Counsel's Expenses") and the Service Payments, as approved by the Court.

e) Tax Treatment: The distributions made to individual Class Members shall be characterized as employee compensation and Class Members will be issued a W-2 Form by the Settlement Administrator.

f) Notice to the Class: Class Counsel shall send by first class mail to each Class Member's last known address the Court approved Notice indicating: (i) that each Class Member has the right to object to the Settlement in person or through counsel and be heard at the Fairness Hearing; (ii) that the Settlement shall become effective only if it is finally approved by the Court under Civil Rule 23; and (iii)) that all Released Claims of a Class Member shall be waived.

g) Residual Funds: The Claims Administrator shall be responsible for mailing the settlement checks to the Class using the addresses provided by Class Counsel. The Claims Administrator will promptly notify Class Counsel of any returned or uncashed checks and Class Counsel will undertake to determine a current address for the remailing or reissuing of any returned or uncashed settlement check by the Settlement Administrator. Any undeliverable checks and any checks that remain uncashed 120 days from the date of issuance shall be donated to Georgia Legal Services Program, Inc. (GLSP), a statewide nonprofit law firm providing legal services to eligible clients in select civil matters such as health, public assistance, housing, mental health, education, and family law, subject to approval by the Court.

h) <u>Release:</u> Upon the Effective Date of the WARN Settlement Agreement (as defined in the agreement), the Class Members shall release Defendant from all WARN Act-related claims and all such claims shall be resolved under the terms of the WARN Settlement Agreement.

i) <u>Approval Requirement:</u>  The WARN Settlement Agreement shall become effective only if it is finally approved by the Court.

**Relief Requested**

By this Joint Motion, the Parties request that the Court enter orders: (i) preliminarily approving the Settlement Agreement; (ii) approving the form and manner of Class Notice; (iii) scheduling a Fairness Hearing to consider final approval of the Settlement Agreement; and (iv) approving the Settlement Agreement on a final basis including attorneys' fees and costs to Class Counsel.

**Basis for Relief Requested**

Public policy and judicial economy strongly favor settlement of civil litigation.  *See, e.g.*, *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 215 (1994) ("public policy wisely encourages settlements"); *Pennwalt Corp. v. Plough, Inc.*, 676 F.2d 77, 80 (3d Cir. 1982) ("There is a strong judicial policy in favor of parties voluntarily settling lawsuits.").  The policy favoring settlement "is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.* ("*G.M.*"), 55 F.3d 768, 784 (3d Cir. 1995)); *accord In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990) (the Third Circuit maintains a "policy of encouraging settlement of complex litigation that otherwise could linger for years").

7

"The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998) (internal quotation marks omitted).  However, "[t]he strong judicial policy in favor of class action settlement contemplates a circumscribed role" for the courts in reviewing a class action settlement that follows substantial adverse litigation and intense arm's-length negotiations.  *Ehrheart*, 609 F.3d at 595.  The courts do not and cannot demand that "the settlement is the fairest possible resolution--a task particularly ill-advised given that the likelihood of success at trial (on which all settlements are based) can only be estimated imperfectly."  *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 173-74 (3d Cir. 2013).  Instead, courts play a more modest role in ensuring that "the compromises reflected in the settlement-- including those terms relating to the allocation of settlement funds--are fair, reasonable, and adequate when considered from the perspective of the class as a whole."  *Id.* at 174

A.     **The Court Should Preliminarily Approve the Settlement Agreement Pursuant to Fed. R. Civ. P. 23.**

After class certification, approval of a class settlement generally requires two hearings: one preliminary approval hearing and one final "fairness" hearing.  The preliminary approval determination requires the Court to consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."  *In re Linerboard Antitrust Litigation*, 292 F.Supp.2d 631, 638 (E.D. Pa. 2003) (citing *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 785-86 (3d Cir. 1995)); *see also In re Cendant Corp. Litigation*, 264 F.3d 201, 233 n.18 (3d Cir. 2001).  "Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient."  *Gates v.*

8

*Rohm & Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008) (quoting *Smith v. Prof'l Billing & Mgmt. Servs., Inc.*, No. 06-4453JEI, 2007 WL 4191749 (D.N.J. Nov. 21, 2007).

Here, the Settlement Agreement has no obvious deficiencies and the settlement amount falls well within the range of a reasonable settlement as it is over 60% of the class's maximum theoretical WARN damages. Further, each of the above-cited factors weighs in favor of preliminary approval of the Settlement Agreement.

First, the Settlement is the result of good faith, arm's length negotiations between capable adversaries. The Parties had several informal settlement conferences prior to formal mediation and reached agreement after a second mediation session.

Second, the Parties exchanged a significant amount of information during the course of the litigation. In particular, the Class Representative and Defendant responded to interrogatories and produced documents regarding the claims and defenses, and Plaintiff's counsel obtained additional documents from the Metadigm Bankruptcy Trustee.

Third, the proponents of the case are experienced in similar litigation and have settled a large number of WARN Act class matters. *See infra*, pp. 15-17.

In light of the foregoing, the Court should preliminarily approve the Settlement Agreement.

**C.      The Court Should Approve the Form and Manner of the Proposed Notice**

Once a settlement is preliminarily approved, notice of the proposed settlement and of the fairness hearing is provided to class members. Federal Rule of Civil Procedure 23(e) requires that all members of the class be notified of the terms of any proposed settlement. The Rule 23(e) requirement is "designed to summarize the litigation and the settlement and to apprise class members of the right and opportunity to inspect the complete settlement documents, papers and

9

pleadings filed in the litigation." *Krell v. Prudential Ins. Co. of America (In re Prudential)*, 148 F.3d 283, 326-27 (3d Cir. 1998).

The proposed Class Notice outlines the terms of the Settlement Agreement, including the attorneys' fees and out-of-pocket costs and expenses proposed to be paid to Class Counsel, and describes how each Class Member may obtain a copy of the Settlement Agreement.  The Class Notice also states the date, time, location and purpose of the Fairness Hearing, informs each Class Member of their right to appear at the Fairness Hearing, and describes the procedure for objecting to the Settlement Agreement.

**D.     The Court Should Finally Approve the Settlement at the Fairness Hearing**

The Parties jointly request that the Court set a Fairness Hearing at which the Court should finally approve the Settlement.  Rule 23 provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed or compromised only with the court's approval."  Fed. R. Civ. P. 23(e); *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001). "This inquiry requires the court's independent and objective analysis of the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished."  *Community Bank*, MDL No. 1674, No. 03-0425, 2008 WL 3833271 at *5 (W.D. Pa. Aug. 15, 2008) (quoting *General Motors*, 55 F.3d at 785).

Consistent with the policy favoring settlement of class actions, the Court should apply "an initial presumption of fairness when reviewing a proposed settlement where" the initial factors on preliminary approval have been satisfied and there have not been significant objections from class members. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).  *See also Cendant Corp.*, 264 F.3d at 232 n.18); Newberg on Class Actions §13:45 (5th ed.) ("Because of [the judicial] preference [for settlement], a court will presume that a

10

proposed class action settlement is fair when certain factors are present, particularly evidence

that the settlement is the product of arms-length negotiation, untainted by collusion."). Here, as

discussed above, these factors have been met. There is also no expectation of significant

objections so a presumption of fairness should apply.

Beyond this presumption, the Third Circuit "has adopted a nine-factor test to help district

courts structure their final decisions to approve settlements as fair, reasonable, and adequate as

required by Rule 23(e)." *In re General Motors Corp. Pick-Up Truck Fuel Tank Products*

*Liability Litigation*, 55 F.3d 768, 785 (3d Cir.1995).

These factors are as follows:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction
> of the class to the settlement; (3) the stage of the proceedings; (4) the risks of
> establishing liability; (5) the risks of establishing damages; (6) the risks of
> maintaining the class action through trial; (7) the ability of the defendants to
> withstand a greater judgment; (8) the range of reasonableness of the settlement
> fund in light of the best recovery; and (9) the range of reasonableness of the
> settlement in light of all the attendant risks of litigation.

*Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975). This list is not exhaustive. *See*

*Community Bank*, 2008 WL 3833272 at *6.

Moreover, the "*Girsh* factors" strongly support approval of the Settlement Agreement.

As discussed, litigation of the claims will be complicated, protracted and expensive. The Class

Representatives support the Settlement Agreement and Class Counsel believes that the bulk of

the other Class Members will have a favorable reaction to the Settlement Agreement and will not

object to it.

The Settlement Agreement was reached after the essential facts had been thoroughly

investigated by Class Counsel through extensive fact discovery and disclosures by Defendant's

counsel. The parties participated in two mediation sessions and informal settlement conferences.

The risk that the Class Representative would be unable to establish liability was present because of the defenses asserted by Defendant including its contention that it was not the employer of the Class Members for purposes of the WARN Act. When considered in light of the best possible recovery and the attendant risks, the settlement falls well within the range of reasonableness. The settlement provides for a payment of $1 million, representing over sixty percent of the maximum theoretical portion of the WARN damages of the Class. This is a substantial recovery given the attendant litigation risks and the settlement should be approved. *See Community Bank*, 2008 WL 3833271 at *10 (finding that in light of the attendant risk a settlement representing approximately twelve percent (12.6%) of the prayer was reasonable).

Based on the foregoing, the Court should approve the Settlement Agreement pursuant to Fed R. Civ. P. 23(e).

**E.      The Court Should Approve Class Counsel's Attorneys' Fees and Costs**

Class Counsel is entitled to be paid a fee out of the settlement fund created for the benefit of the Class. Fed. R. Civ. P. 23(h); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980) (the Supreme Court has consistently recognized the common fund doctrine to permit attorneys who obtain a recovery for a class to be compensated from the benefits achieved as a result of their efforts); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (calculation of fees based on the common-fund doctrine is based on a percentage of the common fund recovered). Defendant does not oppose this request.

The law in this Circuit is settled that in common fund cases, fees for class counsel are awarded primarily based on a percentage of the common fund recovered for the class and that the lodestar is considered only when the court cannot otherwise come to a resolution of class counsel's fees. *In re Cendant Corp. Litigation*, 264 F. 3d 201,221, 283 (3d Cir. 2001); *Gunter v.*

*Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). Class Counsel submits that the award of a fee of one-third the WARN component of the Settlement, as provided in the Settlement Agreement, is fully warranted.

The percentage award should be based on seven factors, among others, that were enumerated in *Gunter*, 223 F.3d at 195 n.1, and then quoted with approval in *Cendant*, 264 F.3d at 283, as follows:

> (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

An eighth factor--the percentage likely to have been negotiated between private parties in a similar case – was considered in determining the percentage fee award from a common fund in *In re Ikon Office Solutions, Inc. Securities Litigation*, 194 F.R.D. 166, 193 (E.D. Pa. 2000).

Class Counsel submits that the application of these eight factors to the present case shows that the agreed attorneys' fee of one-third of the WARN recovery should be approved for the following reasons:

- As to the size of the class and the recovery, the Class has 160 members and the recovery will be $1 million. The WARN settlement is favorable to the Class given the complexity of the numerous defenses asserted by Defendant.

- The Class Representative supports the settlement and Class Counsel believes that few, if any, Class Members will object, and that those objections, if any, will not be substantial or merited.

- As shown by the very favorable settlement of this matter achieved in the face of the difficult liability issues, Class Counsel provided legal services with considerable skill. The services were rendered with efficiency, in light of the complexity of the issues, the difficulty of addressing the several defenses, and the need for discovery.

13

- The litigation was initiated in 2013 and was complex and factually intensive. Plaintiff's counsel successfully opposed a motion to dismiss or to transfer the case and a second attempt to transfer the case.

- The risk of non-payment at the outset was very substantial as it was not known at that time whether a class would be certified and whether there would be sufficient funds available to pay those claims. In addition, the risk of non-payment was increased by the defenses that Defendant asserted.

- As to fees in similar cases, Class Counsel submits that in WARN class actions that Class Counsel has prosecuted, Class Counsel's requests for attorneys' fees – almost always for one-third the class recovery – have never been denied or even reduced.

- As to the percentage likely to have been negotiated between private parties in a similar case, Class Counsel was retained by the Class Representative on a one-third contingency basis, plus expenses. Class Counsel has been consistently retained in other WARN class actions on a one-third contingency basis.

Plainly, each of the factors to be weighed in considering a fee request favors the award of one-third of the settlement amount (after deduction of service payments, out-of-pocket expenses, and administration costs).

The requested fee of one-third of the proposed settlement amount is supported by the percentage awards in other types of common fund cases. Moreover, the "Third Circuit favors the percentage-of-recovery method of calculating fee awards in common fund cases." *Glaberson v. Comcast Corp.*, 2015 WL 5582251 at *11 (E.D. Pa. Sept. 22, 2015), *citing In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 1006); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005). As pointed out in *Ikon*, 194 F.R.D. at 194, attorneys' fee awards based upon a percentage of a common fund mostly "fall in the range of nineteen to forty-five percent." *See also Levit v. Filmways, Inc.*, 620 F. Supp. 421 (D. Del. 1985) (33% of the common fund); *In re Flonase Antitrust Litigation*, 951 F. Supp. 2d 739, 751 (E.D. Pa. 2013) (attorneys' fees of $50 million, representing 33 1/3% of common fund of $150 million, approved); *Bradburn Parents Teacher Store, Inc.* v. 3M, 513 F. Supp. 2d 322, 336 (E.D.Pa. 2007) (attorneys' fees of 35% of

14

common fund approved).  Class Counsel believes that the fees of one-third of the total expected

Class recovery on the WARN claims should be approved under the multi-factor test applicable in

this Circuit to fee awards from common fund recoveries.

As to fees in similar cases, Class Counsel has consistently been awarded fees of one-third

of the class recovery in WARN cases by Bankruptcy and District Courts across the country,

including in a number of cases before bankruptcy courts in the District of Delaware.  (Exhibit B).

*See*, *Folk, et al. v. Monaco Coach Corporation,* Case No. 09-50402 (Bankr. D. Del.) (awarding

attorneys' fees of 33⅓% of a settlement of $10 million); *Jackson v. Qimonda*, Case No. 09-

50192 (MFW) (Bankr. D. Del.) (awarding undersigned co-counsel attorneys' fees of 33⅓% of

settlement of more than $19 million); *Aguiar v. Quaker Fabric Corporation,* Case No. 07-51716

(Bankr. D. Del.) (awarding attorneys' fees of 33⅓% of $1 million); *Rasheed v. American Home

Mortgage Corp.*, Case No. 07-51688 (Bankr. D. Del.) (awarding undersigned co-class counsel a

fee of 33⅓% of the settlement fund of $6.5 million);  *Bulchak v. Coda Holdings, Inc., et al*., Case

No. 13-51031 (Bankr. D. Del.) (awarding attorneys' fees of 33⅓% of $430,000); *Bressmer v.

Delta Financial Corporation, Case No. 07-51808 (Bankr. D. Del.)* (awarding attorneys' fees of

33⅓% of $2.525 million); *Kohlstadt* v. *Solyndra LLC,* Case No. 11-53155 (Bankr. D. Del.)

(awarding undersigned co-counsel attorneys' fees of 33⅓% of $3.5 million); *Decuir v. WL

Homes LLC*, Case No. 09-52270 (Bankr. D. Del.) (awarding attorneys' fees of 33⅓% of about $1

million).

Indeed, in all of Class Counsel's more than 50 WARN class action settlements, it has not

been awarded less than one-third.  (Exhibit B).  *See Thielmann v. MF Global Holdings, Ltd.*,

Case No. 11-02880 (approving award of attorney's fees of 40% of $5 Million); *Conn v. Dewey &

Lebeouf LLP*, Case No. 12-01672 (Bankr. S.D.N.Y) (awarding attorneys' fees of 33⅓% of $4.5

million); *McCullough v. Westside Community Hospital Inc.*, Case No. 13-00954 (Bankr. N.D. Ill.) (awarding attorneys' fees of 33⅓% of $360,000); *Wojciechowski v. Clearedge Power Inc.*, Case No. 14-04152 (Bank. N.D. Cal.) (awarding attorneys' fees of 33⅓% of $1.3 million); *Schuman v. The Connaught Group, Ltd.*, Case No. 12-01051 (Bankr. S.D.N.Y.) (awarding attorneys' fees of 33⅓% of settlement of approximately $675,000); *Murphy v. LenderLive Corp.*, Case No. 13-3135 (D. Colo.) (awarding attorneys' fees of 33⅓ $300,000); *Mochnal v. EOS Airlines, Inc.*, Case No. 08-08279 (Bankr. S.D.N.Y.) (awarding attorneys' fees of 33⅓% of settlement of approximately $1.7 million); *Iannacone v. Fortunoff Holdings In*c., Case No. 09-22581 (Bankr. S.D.N.Y.) (awarding attorneys' fees of 33⅓% of settlement of approximately $1,330,000); *Guippone v. BH S & B Holdings, LLC*, Case No. 09-01029 (S.D.N.Y.) (awarding attorneys' fees of 33⅓% of settlement of approximately $900,000); *Matzen v. Corwood Laboratories, Inc.*, Case No. 10-08003 (Bankr. E.D.N.Y.) (awarding attorneys' fees of 33⅓% of settlement of approximately $500,000); *Curry v. Caritas Health Care Inc.*, Case No. 09-40901 (Bankr. S.D.N.Y) (awarding attorneys' fees of 33⅓% of settlement of approximately $2,650,000); *Callahan v. Taylor Bean & Whitaker Mortgage Corp.*, Case No. 09-00439 (Bankr. M.D. Fla.) (awarding attorneys' fees of 33⅓% of settlement of $15 million); *Binford, et al. v. First Magnus Capital, Inc.*, Case No. 08 -01494 (Bankr. D. Ariz.) (awarding attorneys' fees of 33⅓% of settlement of $2.6 million cash and $2.9 million contingent proceeds); *Capizzi, et al. v. AWTR Liquidation, Inc. f/k/a Rhythm and Hues, Inc.*, Case No. 13-01463 (Bankr. C.D. Cal.) (awarding undersigned co-counsel attorneys' fees of 33⅓% in WARN settlement of $1 million); *Updike v. Kitty Hawk Cargo, Inc.*, Case No. 07-04179 (Bankr. N.D. Tex.) (awarding attorneys' fees of 33⅓% of $1.4 million); *Bridges v. Continental AFA Dispensing Co.*, Case No. 08-45921 (Bankr. E.D. Mo.) (awarding attorneys' fees of 33⅓% of $1.5 million); *Johnson v. First NLC*

16

*Financial Services, LLC*, Case No. 08-01130 (Bankr. S.D. Fla.) (awarding attorneys' fees of 33⅓% of $400,000).

Class Counsel is also seeking reimbursement for out-of-pocket costs incurred in the litigation not to exceed $32,000 (to be deducted prior to the calculation of attorneys' fees). To date, Class Counsel has incurred $30,349.56 in costs and expenses in prosecuting the Class Members' WARN claims and expects to incur additional expenses in connection with seeking preliminary and final approval of the settlement, mailing the Class Notice, and communicating with Class Members regarding the Settlement.

In the Third Circuit, reference to the lodestar, *i.e.*, the time reasonably spent at a reasonable hourly rate is disfavored as "very time consuming" and is only to be resorted to if the court is concerned that the fee award may result in a "windfall." If it is necessary to avoid a potential windfall, the Court can "cross-check' the percentage award against the lodestar. *Cendant*, 264 F.3d at 285; *Bradburn*, 513 F.Supp.2d at 338.

Here, the Court should resolve the fee request without reference to the lodestar, especially in view of the burdens of carrying-out a lodestar "cross-check." Such a cross-check would, in any event, demonstrate that the requested fee does not result in a windfall to Class Counsel who expended significant time in prosecuting this action.

**F.     The Court Should Approve Service Awards to the Class Representative**

Courts acknowledge that named plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *Bradburn*, 513 F.Supp. 2d at 344 ("'Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'") (citing *Cullen v. Whieman Med. Corp.*, 197 F.R.D. 136, 145 (E.D.

17

Pa. 2000)).  Here, the Class Representative filed a federal lawsuit that is searchable on the

internet and may become known to prospective employers when evaluating the person.  The

Class Representative retained Outten & Golden LLP to commence this action at a point when he

had been terminated from his employment with Defendant's portfolio company Metadigm.  The

Class Representative agreed to initiate the class action as named Plaintiff at a point when his

future was uncertain and employment prospects potentially dimmed by bringing a suit in

connection with his former employer.

      The Class Representative should be awarded a service payment for the significant work

he undertook on behalf of the Class.  He expended time and effort to assist with the preparation

of the Complaint, provided Class Counsel with a declaration in support of the motion for class

certification, and spent significant time speaking to Class Counsel in preparation for mediation

and subsequent settlement negotiations.  He assisted with discovery and provided counsel with

relevant documents in his possession.  The Class Representative performed important services

for the benefit of the Class in commencing the litigation and in the preparation for mediation.

*See* (Exhibit B, ¶ 7). Accordingly, the payments are appropriate and justified as part of the

overall Settlement in light of the value of their services to the Class and risks taken on behalf of

the Class.  *See*, *Bradburn,* 513 F. Supp. 2d at 344 ($75,000 incentive award to class

representative approved).

      The Contributing Class Member provided detailed information regarding the operations

of Metadigm that were critical to Class Counsel's understanding of the case, particularly with

respect to the sites of employment of Metadigm's employees, which aided in Class Counsel's

negotiation of the settlement.  He also expended significant time during preparations for

mediation. Finally, he agreed to serve as a class representative, if necessary. His contributions conferred direct and substantial benefits on the Class. *See* (Exhibit B, ¶ 8).

Defendant does not oppose this proposed award of service payments to the Class Representative and Contributing Class Member, but rather specifically agreed to these proposed amounts in the Settlement Agreement.

The amount of the service awards agreed to by the Parties is also consistent and on scale with amounts awarded in WARN class actions. (Exhibit B). *See Austen v. Archway Cookies*, Case No. 08-12323 (Bankr. D. Del. 2008) ($10,000 service award to two class representatives in $4 million settlement); *Aguiar v. Quaker Fabric Corporation*, Case No. 07-51716 (Bankr. D. Del. 2007) ($15,000 service award to class representative on behalf of a certified class of 900 for $1 million); *Capizzi et al v. AWTR Liquidation, Inc.*, Case No. 2:13-ap-01209-NB (Bankr. C.D. Cal. 2013) ($10,000 service award to each of two class representatives in WARN settlement of $1 million); *Curry v. Caritas Health Care Inc.*, 09-40901 (Bankr. E.D.N.Y. 2009) ($10,000 service award in $2.65 million settlement); *Mofield v. FNX Mining Company USA Inc.*, Case No. 08-00105 (M.D. Tenn. 2008) ($10,000 service award in settlement of $975,000); *Guippone v. BH S & B Holdings, LLC*, Case No. 09-01029 (Bankr. S.D.N.Y. 2009) ($10,000 service award to class representative in WARN settlement of $900,000); *Conn v. Dewey & Lebeouf LLP*, Adv. Pro. No. 12-01672 (MG) (Bankr. S.D.N.Y. 2012) ($15,000 service award to class representative in WARN settlement); *Binford et al v. First Magnus Capital, Inc.*, Case No. 08-01494 (GBN) (Bankr. D. Ariz. 2010) (awarding eight class representatives service payments of $7,500, totaling $60,000, from settlement fund of $2.6 million cash plus $2.9 million contingent proceeds); *Callahan v. Taylor Bean & Whitaker Mortgage Corp.*, 09-00439 (Bankr. M.D. Fla. 2009) ($10,000 service award to each of nine class representatives in $15 million settlement); *Matzen v.*

*Corwood Laboratories, Inc.*, 10-08003 (Bankr. E.D.N.Y. 2010) ($10,000 service award in $500,000 settlement); *Updike v. Kitty Hawk Cargo, Inc.*, Case No. 07-04179 (Bankr. N.D. Tex. 2007) ($10,000 service award to two class representatives in a settlement of $1.4 million); *Bridges v. Continental AFA Dispensing Co.*, Case No. 08-45921 (Bankr. E.D. Mo. 2008) ($10,000 service award to class representative in a class settlement of $1.5 million); *Johnson v. First NLC Financial Services, LLC*, Case No. 08-01130 (Bankr. S.D. Fla. 2008) ($5,000 service award to two class representatives in a $400,000 chapter 7 settlement); *Murphy v. LenderLive Corp.*, Case No. 13-3135 (RBJ) (D. Colo. 2015) ($5,000 service payments to two class representatives in a $300,000 WARN settlement).  *See also Thielmann v. MF Global Holdings, Ltd.*, Case No. 11-02880 ($12,500 to six class representatives and $2,000 to two contributing non-plaintiffs in a class settlement of $5 million); *Callahan v. Taylor Bean & Whitaker Mortgage Corp.*, Adv. Proc. No. 09-00439 (M.D. Fla.) (approving awards of $10,000 to nine class representative and $750 to two alternative class representatives).

Accordingly, the service awards for the Class Representative and the Contributing Class Member should be approved.

## CONCLUSION

WHEREFORE, the Parties respectfully request that the Court (i) approve the form and manner of notice to Class Members of the Settlement Agreement, (ii) enter orders preliminarily approving the Settlement and Release Agreement dated as of  June 28, 2016 among Defendant and the Class Members, (iii) schedule a fairness hearing to consider final approval of the Settlement Agreement, (iv) finally approve the Settlement Agreement, and (v) grant such other and further relief as it deems just and appropriate.

Dated: September 19, 2016

Respectfully submitted,

By: _/s/ Frederick Rosner_____
Frederick Rosner (#3995)
Scott J. Leonhardt (#4885)
**THE ROSNER LAW GROUP LLC**
824 N. Market Street, Suite 810
Wilmington, DE 19801
Telephone: (302) 777-1111
E-mail: rosner@teamrosner.com
             leonhardt@teamrosner.com

_/s/ René S. Roupinian_
René S. Roupinian
Jack A. Raisner
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY  10017
Telephone: (212) 245-1000
E-mail: rsr@outtengolden.com
             jar@outtengolden.com

_Counsel for Plaintiff and the Certified Class_

_/s/ James H. Coil III_
James H. Coil III
Flora Manship
**KILPATRICK TOWNSEND
& STOCKTON LLP**
Suite 2800
1100 Peachtree Street NE
Atlanta, Georgia 30309-4528
Tel: (404) 815-6500
Email: jcoil@kilpatricktownsend.com
Email: fmanship@kilpatricktownsend.com

_/s/ Kathleen Furey McDonough_____
Kathleen Furey McDonough (#2395)
**POTTER ANDERSON
& CORROON LLP**
Hercules Plaza, Sixth Floor
1313 North Market Street

21

P.O. Box 951
Wilmington, Delaware 19899-0951
Tel: (302) 984-6000
Email: kmcdonough@potteranderson.com

*Counsel for Defendant*